# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID BATTISTE,<br><br>              Plaintiff,<br><br>    vs.<br><br>H. BAEZA, et al.,<br><br>              Defendants. | 1:11cv00918 LJO DLB PC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br>(Document 33)<br><br>TWENTY-ONE DAY DEADLINE |

Plaintiff David Battiste ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on May 18, 2011.  Pursuant to the Court's March 9, 2012, order, this action proceeds on Plaintiff's Eighth Amendment failure to protect claim against Defendants Cooper, Baeza and Benevidez.

On February 21, 2013, Defendants filed this Motion for Summary Judgment.[1]

Plaintiff failed to file an opposition or a statement of non-opposition, and he has not otherwise communicated with the Court.[2]  On July 25, 2013, the Court notified Defendants that

---

[1] In Defendants' February 21, 2013, notice, filed concurrently with their motion for summary judgment, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment.  Klingele v. Eikenberry, 849 F.2d 409, 411-412 (9th Cir. 1988).

[2] The proofs of service indicate that Defendants served Plaintiff at the main mailing address for Corcoran State Prison, where he is currently incarcerated.  The proofs of service showed Plaintiff's correct name and identification number.  There has been no indication that service was not proper.

Plaintiff's verified complaint and his deposition testimony would be used in deciding the motion and permitted Defendants to file supplemental briefing. On August 7, 2013, Defendants filed a reply brief and evidentiary objections. Accordingly, the motion is deemed submitted pursuant to Local Rule 230(l).

## I.   LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. at 324. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586, n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2002); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963 amendments).

In resolving a motion for summary judgment, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)).

Finally, to demonstrate a genuine dispute, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as

a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87 (citations omitted).

The instant motion for summary judgment is unopposed. A district court may not grant a motion for summary judgment solely because the opposing party has failed to file an opposition. Cristobal v. Siegel, 26 F.3d 1488, 1494–95 & n. 4 (9th Cir.1994) (unopposed motion may be granted only after court determines that there are no material issues of fact). The Court may, however, grant an unopposed motion for summary judgment if the movant's papers are themselves sufficient to support the motion and do not on their face reveal a genuine issue of material fact. Henry v. Gill Industries, Inc., 983 F.2d 943, 950 (9th Cir.1993) (same).

## II.     UNDISPUTED FACTS

Plaintiff neither filed his own separate statement of disputed facts nor admitted or denied the facts set forth by Defendants as undisputed. Local Rule 260(b). Therefore, Defendants' statement of undisputed facts is accepted except where brought into dispute by Plaintiff's verified complaint. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence).

At all relevant times, Plaintiff was an inmate in the custody of the California Department of Corrections and Rehabilitation at California State Prison- Corcoran. Compl. 1. At all relevant times, Defendants Baeza, Benevidez and Cooper were correctional officers at California State Prison- Corcoran. Baeza Decl. ¶ 1; Benevidez Decl. ¶¶ 1-2; Cooper Decl. ¶¶ 1-2.

On September 28, 2010, Baeza was working as the C-Facility yard officer number one, Benevidez was working C-Facility, Building Four, as the floor officer number two, and Cooper was working as the C-Facility search and escort officer. Baeza Decl. ¶ 2; Benevidez Decl. ¶ 2; Cooper Decl. ¶ 2. Defendant Benevidez normally worked as a floor officer in C-Facility, but was working overtime and covering the Building Four floor officer position on September 28,

2010.  Benevidez was not familiar with inmates in Building Four, their individual histories or their interactions with other inmates.  Benevidez Decl. ¶¶ 2-3.

On September 28, 2010, Plaintiff was housed in C- Facility, Building Four.  At that time, C-Facility was a Sensitive Needs Yard ("SNY").  The SNY is for inmates who, for a number of reasons, cannot be housed with the general population.  The C-Facility SNY was safer and the inmates socialized more freely, and with all races.  Baeza Decl. ¶ 3; Benevidez Decl. ¶ 3; Cooper Decl. ¶3; Pl.'s Dep. 15:14, 17:2-4.

On September 28, 2010, Plaintiff's cellmate was Rory Roche.  Pl.'s Dep. 10:18-23.  Plaintiff knew Roche prior to becoming cellmates, and they would talk and were always respectful towards each other.  Pl.'s Dep. 10:20-23, 19:4-8.  Inmate Roche got along with everyone on the yard and even though he would argue with his boyfriend, these arguments never made Plaintiff feel unsafe.  Pl.'s Dep. 20:11-21:2.  Plaintiff asked Roche if he wanted to cell with him when he learned that Roche needed a new cellmate.  Pl.'s Dep. 22:14-23.

Prior to September 28, 2010, Plaintiff and Inmate Roche were cellmates for three to three and one half months, and nothing had ever happened to make Plaintiff believe he was at risk.  Pl.'s Dep. 23:1-2, 25:3-8.  Roche was like a little brother to Plaintiff, and Plaintiff treated him as such.  Pl.'s Dep. 23:5- 24:3.  They never argued.  Pl.s Dep. 24:4-7.  In fact, Plaintiff got along with all of his cellmates.  Pl.'s Dep. 11:3-4.

On September 28, 2010, Plaintiff and Roche were fine the whole day.  Pl.'s Dep. 28:1.  Plaintiff last saw Roche on the yard, near the program office, at approximately 7:30 p.m.  Pl.'s Dep. 32:4-9.  When Plaintiff returned to his cell prior to lock-up, he was surprised that Roche was not there.  Pl.'s Dep. 32:17-19.

Before lock-up, Inmate Roche approached Benevidez, who was in his office in C-Facility, and stated that he no longer wanted to live with Plaintiff.  Benevidez asked Roche why, but he refused to tell Benevidez the reason.  Roche appeared calm at the time.  Benevidez Decl. ¶

11.  Benevidez contacted Sergeant Canales and told him that Roche no longer wanted to live with Plaintiff, though he did not tell him why Roche didn't want to lock up.  Canales Decl. ¶ 11.  Canales told Benevidez to escort him to the program office, but Benevidez told Roche to sit on the dayroom benches until Benevidez locked-up the unit.  Benevidez Decl. ¶¶ 12, 16; Canales Decl. ¶ 11.  Roche complied and he did not say or do anything during the conversation that made Benevidez believe that he might attack Plaintiff.  Roche never told Benevidez that he did not want to go back to his cell because he was going to assault Plaintiff.  Benevidez Decl. ¶ 17.

After Canales spoke with Benevidez, he contacted Defendants Baeza and Cooper and requested that they help with lock-up in Building Four and assist with Roche.  Canales was busy with an unrelated issue at the time.  Canales Decl. ¶ 12.  Baeza and Cooper were told that if there was a problem, to bring Roche to the program office.  Baeza Decl. ¶ 10; Cooper Decl. ¶ 10; Canales Decl. ¶ 12.  Canales did not tell Baeza or Cooper why Roche was not locking up because he did not know.  Baeza Decl. ¶ 10; Cooper Decl. ¶ 10; Canales Decl. ¶ 12.

While Benevidez conducted the lock-up, he stopped at Plaintiff's cell to ask Plaintiff if there was a problem because Roche would not tell him what was wrong, and Benevidez wanted to determine if there was a security concern.  Benevidez Decl. ¶ 18; Pl.'s Dep. 32:19-20.  Benevidez asked Plaintiff if there was a problem because Roche did not want to be his cellmate anymore.  Plaintiff told Benevidez that he did not have a problem with Roche and that Roche could return to the cell if he wanted to.  Benevidez Decl. ¶ 19; Compl. 3; Pl.'s Dep. 37:16-22.  After the conversation, Plaintiff did not fear he would be attacked.  Pl.'s Dep. 38:1-16.

While Benevidez was speaking with Plaintiff, Defendants Cooper and Baeza came to Building Four and began speaking with Roche.  Baeza and Cooper had not spoken with Benevidez prior to arriving at the Building.  Benevidez Decl. ¶ 21; Baeza Decl. ¶ 11; Cooper Decl. ¶ 11.  When they approached Roche, Baeza told him that he needed to lock-up.  Roche said he did not want to lock-up, but did not say why.  Baeza repeated his order and Roche said,

"okay, I'll go in there."  Roche got up and started walking back to his cell.  Baeza Decl. ¶ 11; Cooper Decl. ¶ 11.  Benevidez saw Roche walking back towards the cell, and he appeared calm.  Benevidez thought that Roche must have changed his mind and decided to return to his cell.  Benevidez Decl. ¶ 22.

When Roche, Cooper and Baeza reached the cell, Cooper grabbed the cell door to secure it.  As soon as Roche reached the cell door, and without warning, he rushed into the cell and started striking Plaintiff.  Baeza Decl. ¶ 15; Pl.'s Dep. 38:24-39:10.  At that point, Cooper heard Baeza should the order, "get down."  Cooper observed Roche striking Plaintiff.  Cooper Decl. ¶ 16.  Benevidez, who had started locking up other cells, heard an officer yell, "get down" and he immediately returned to Plaintiff's cell.  Benevidez Decl. ¶¶ 23-24.

Roche and Plaintiff did not stop fighting after Baeza's order.  Baeza Decl. ¶ 16; Cooper Decl. ¶ 17.  Baeza then used his MK-9 Fogger Aerosol Canister to deploy one burst of pepper-spray at Roche.  Baeza Decl. ¶ 16; Cooper  Decl. ¶ 17.  Roche immediately stopped the attack and got down in the prone position.  Baeza Decl. ¶ 16; Cooper Decl. ¶ 17; Pl.'s Dep. 39:16.

Benevidez and Cooper escorted Plaintiff to the shower to decontaminate.  Benevidez Decl. ¶ 25; Cooper Decl. ¶ 19.  After decontamination, Benevidez and Canales escorted Plaintiff to the program office and placed him in a holding cell.  Benevidez Decl. ¶ 26; Canales Decl. ¶ 18.  During the escort, Benevidez heard Plaintiff say "I still got nothing but love for you."  Benevidez Decl. ¶ 27.

After the incident, Plaintiff was willing to sign a marriage chrono so that Roche could stay in the building.  He did not fear for his safety.  Pl.'s Dep. 44:7-11; 47:11-13.

Prior to the assault, Plaintiff never said anything to Benevidez, Cooper, Baeza or Canales to make them think that he was at risk of being assault by Roche.  Baeza Decl. ¶¶ 21-23; Cooper Decl. ¶¶ 22-24; Benevidez Decl. ¶¶ 30-32; Canales Decl. ¶¶ 22-24.

## III. ANALYSIS

### A. Legal Standard

Under the Eighth Amendment, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted).  To maintain an Eighth Amendment claim, inmates must show deliberate indifference to a substantial risk of harm to their health or safety.  E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F3d. 1144, 1151-52 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Farmer, 511 U.S. at 847.  Prison officials' duty under the Eighth Amendment is to ensure reasonable safety, and prison officials may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.  Farmer, 511 U.S. at 847 (quotation marks and citations omitted).

### B. Discussion

#### 1. *Knowledge of Substantial Risk of Serious Harm*

It is undisputed that Plaintiff was assaulted by Inmate Roche.  However, for purposes of the Eighth Amendment, Defendants must have known that there was a substantial risk that Roche would assault Plaintiff if they returned him to the cell.  For the reasons that follow, there is no genuine dispute of material fact on this issue.

In his complaint, Plaintiff alleges that Inmate Rocha, after the attack, told him that he [Roche] told Defendants Cooper and Baeza that "if they forced him to go into the cell, he was

8

going to assault Plaintiff." Compl. 4. Similarly, during his deposition, Plaintiff testified that after the assault, Roche told him that he told Cooper and Baeza "if they put me in the cell that I was going to take off on you." Pl.'s Dep. 45:1-3. Plaintiff also testified that Defendant Benevidez, when he visited Plaintiff's cell, said, "[Roche] said if we put him in the cell, he's going to take off on you" Pl.'s Dep. 37:7-16.

Defendants dispute this, contending that Roche never told any of them that if he returned to the cell, he would assault Plaintiff. Baeza Decl. ¶¶ 11, 21, 23; Cooper Decl. ¶¶ 11, 22, 23; Benevidez Decl. ¶¶ 30, 32; Canales Decl. ¶¶ 22, 24. Defendant Benevidez also denies telling Plaintiff that Roche said he would "go off." Benevidez Decl. ¶ 20.

As an initial matter, Defendants object to Plaintiff's evidence relating to what Inmate Roche told them as inadmissible hearsay. Defendants are correct and their objection is sustained. Roche's statements are inadmissible hearsay and cannot be used to create a dispute of fact. Fed. R. Civ. Proc. 56(c); Stillwell v. RadioShack Corp., 676 F.Supp.2d 962, 979 (S.D. Cal. 2009) (hearsay statements do not meet plaintiff's burden of producing admissible evidence that creates a dispute of material fact).

Defendants also object to Plaintiff's deposition testimony that Defendant Benevidez told Plaintiff that Roche told them that he would "take off" on Plaintiff if he was returned to the cell as inadmissible hearsay. Defendants are correct and the objection is sustained. Fed. R. Evid. 805 (hearsay within hearsay is not excluded only where each part of the statement conforms to an exception).

Even if Defendant Benevidez's statement was admissible, it does not create a material issue of disputed fact. While such a statement would imply some level of knowledge, the undisputed facts show that there was no knowledge of a *substantial risk* of harm.

It is undisputed that Plaintiff and his cellmate got along well during the prior three months that they were cellmates. In fact, they had respected each other and talked prior to

9

becoming cellmates and Plaintiff treated Roche like a little brother.  It is also undisputed that when Benevidez went to Plaintiff's cell to inquire as to whether there was an issue, Plaintiff said that there was no issue and Roche could return to the cell if he wanted to.  Plaintiff admits that he did not feel at risk at that time, or at any time prior.

There is also no dispute that on September 28, 2010, Plaintiff and Roche had no problems prior to the incident.  Defendants saw Roche just prior to the incident, but he appeared calm and they had no reason to believe, from his actions, that he was going to assault Plaintiff.

Given these undisputed facts, Defendants could not have been aware of an objectively substantial risk of harm to Plaintiff.  As Defendants have argued, a simple request for a cell change, without more, is insufficient to create a substantial risk of harm.  Marroquin v. Grady, 2012 WL 4761897, *10 (N.D. Cal. 2012) ("[E]ven if Plaintiff had requested a cell change, Plaintiff's request for a cell change- even if ostensibly for safety concerns- is not sufficient to raise a triable issue of fact that [defendant] acted with deliberate indifference.").

Indeed, Plaintiff's own deposition testimony supports this finding.  He testified that he didn't think that Defendant Benevidez "would do anything maliciously to anybody on that yard" and that Defendant Benevidez was "put in a bad situation by the other officers."  Pl.'s Dep. 73:2-6.  When asked what evidence he had to support his theory that Defendants Cooper and Baeza used Inmate Roche "to their own benefit," Plaintiff stated, "I don't have any.  That's just my own theory about it."  Pl.'s Dep. 73:16-21.  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir.2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment")

Finally, Plaintiff's statement in his complaint that Defendants "failed to react to the assault quick enough to stop unnecessary injuries" does not alter the result.  Compl. 5.  Plaintiff's statement is a legal conclusion and does not create a factual dispute.  Although he states that Defendants "allowed the assault to continue for several minutes," Plaintiff testified during his

deposition that the attack "just went like boom, boom, and it was gone. . .[p]robably like about 15, 20 seconds." Pl.'s Dep. 39:24-40:1. Plaintiff's testimony is inconsistent and cannot defeat summary judgment.

IV. **FINDINGS AND RECOMMENDATIONS**

Based on the above, it is HEREBY RECOMMENDED that Defendants' Motion for Summary Judgment be GRATNED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies, if any, must be filed within fourteen days (14) days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **August 12, 2013**          /s/ Dennis L. Beck
                                    UNITED STATES MAGISTRATE JUDGE